HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

HERBERT BURKART, et al.,

       Plaintiffs,

     v.

MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC., et al.,

       Defendants.

CASE NO. C11-1921RAJ

ORDER

## I.  INTRODUCTION

This matter comes before the court on Defendants' motion to dismiss Plaintiffs' complaint.  Dkt. # 11.  Although Plaintiffs requested oral argument, the court finds oral argument unnecessary in light of its disposition today.  For the reasons stated below, the court GRANTS the motion to dismiss, but grants Plaintiffs leave to amend their complaint in accordance with this order.  Plaintiffs must file their amended complaint no later than October 26, 2012.

## II.  BACKGROUND

The court describes the facts underlying this case as Plaintiffs allege them in their operative complaint.  Dkt. # 10.  The court uses bare "¶" symbols to cite their complaint and "Ex." to cite the exhibits they attached to it.

In February 2007, Plaintiffs Herbert and Tanya Burkart borrowed $600,000 to purchase or refinance a home on Camano Island in Washington.  They borrowed the

ORDER – 1

money from Global Advisory Group Inc. ("Global"), and signed a note reflecting their agreement to repay Global at an adjustable interest rate initially set at 6.125%. Ex. 1. As with most residential property transactions in Washington, Global secured the note with a deed of trust. Like many deeds of trust in Washington, the Burkarts' deed of trust named Mortgage Electronic Registration Systems, Inc. ("MERS"), as the beneficiary. Ex. 2.

Not long after the Burkarts signed the note, they learned that either the note itself or the loan servicing rights had passed to Countrywide. ¶ 4.8. Countrywide was once a collection of entities in the business of making and servicing home loans. Bank of America, N.A., or perhaps one of its subsidiaries, acquired Countrywide in 2008, assuming responsibility for its loans. For purposes of this order, the court will refer collectively to the Countrywide and Bank of America entities as "BofA".[1] The Burkarts make little effort to distinguish between them, and the court discerns no difference that is material to this order.

In October 2008, the value of the Burkarts' home dropped and they called BofA to request a loan modification. ¶ 4.13. They assert that a BofA representative advised them that BofA could not modify their loan unless they missed payments, and advised them to skip payments in order to qualify for a loan modification. ¶ 4.1. The Burkarts complied. BofA negotiated a loan modification with them, but also moved to declare their loan in default. ¶ 4.14 & Appx. 1. By August 20, 2009, BofA had issued a notice that it was exercising its "acceleration" right under the note—demanding immediate payment of the outstanding principal on the loan. But just seven days later, BofA offered the Burkarts a loan modification.

Unfortunately, the loan modification would have increased the Burkarts' monthly payment obligation. They declined to accept it, and entered another round of

---

[1] For the record, the Countrywide entities are Countrywide Financial Corporation and Countrywide Home Loans, Inc.; the Bank of America entities are BAC Home Loans Servicing, LP, Bank of America Corporation, and Bank of America, N.A.

ORDER – 2

1   negotiations with BofA.  ¶ 4.15 & Appx. 2.  While negotiations were ongoing, BofA

2   issued another acceleration notice in December 2009.  By May 2010, BofA offered

3   another loan modification.  Again, the payments were higher than the Burkarts preferred,

4   but they agreed to the loan modification in June 2010.  By mid-2011, the Burkarts had

5   again fallen behind in payments.  ¶ 4.17.  BofA issued another acceleration notice in

6   September 2011.  ¶ 4.18.  Throughout the Burkarts' lengthy negotiations with BofA, they

7   incurred late charges and other fees in addition to the principal and interest on the note.

8       The Burkarts sued in Island County Superior Court In October 2011.  They

9   initially sued Global, MERS, BofA (three Bank of America entities and two Countrywide

10  entities), and a host of unnamed individual defendants who allegedly had some role in

11  these events.[2]  Defendants removed the case here, invoking the court's diversity

12  jurisdiction.  Defendants contended that Global, the only Washington resident among

13  them, had been fraudulently joined.  The Burkarts voluntarily dismissed their claims

14  against Global.  The parties agreed to permit the Burkarts to file an amended complaint.

15      The result of the parties' agreement was a 56-page complaint (including two

16  "appendixes" with additional allegations) that incorporated more than 400 pages of

17  exhibits.  Defendants now move to dismiss that complaint

18                              **III.  ANALYSIS**

19      Defendants invoke Fed. R. Civ. P. 12(b)(6), which permits a court to dismiss a

20  complaint for failure to state a claim.  The rule requires the court to assume the truth of

21  the complaint's factual allegations and credit all reasonable inferences arising from its

22  allegations.  *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007).  The plaintiff must

23  point to factual allegations that "state a claim to relief that is plausible on its face."  *Bell*

24  *Atl. Corp. v. Twombly*, 550 U.S. 544, 568 (2007).  If the plaintiff succeeds, the complaint

25  avoids dismissal if there is "any set of facts consistent with the allegations in the

26  ────────────────

   [2] So far as the record reveals, the Burkarts have never served any individual defendant.  None of
   them have appeared in this action.

27

28  ORDER – 3

complaint" that would entitle the plaintiff to relief. *Id.* at 563; *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."). The court typically cannot consider evidence beyond the four corners of the complaint, although it may rely on a document to which the complaint refers if the document is central to the party's claims and its authenticity is not in question. *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). The court may also consider evidence subject to judicial notice. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

Defendants make a concerted effort to decipher the Burkarts' complaint in an effort to show that it does not plausibly allege any claim upon which the court can grant relief. They succeed in some respects and fall short in others, but that is more the result of the Burkarts' muddled pleading than anything else. The trouble with the Burkarts' complaint is not merely that it fails to plausibly allege claims upon which the court can grant relief, it is that no reasonable attorney could understand most of the claims the Burkarts are attempting to allege. Although the complaint suffers from implausibility, it suffers at least as much from incomprehensibility. The Federal Rules of Civil Procedure require a "short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). The Burkarts' complaint does not meet this standard.

The only other court in this District to address a similar lawsuit from the Burkarts' counsel has also struggled with counsel's "[s]hotgun-style pleadings." *See Mickelson v. Chase Home Finance LLC*, No. 11-1445MJP, (Dkt. # 58) at 11 (Apr. 16, 2012 order granting motion to dismiss). In *Mickelson*, the court decried counsel's "sprawling" and "hard-to-follow" complaint, pointed out "unintelligible" allegations, and dismissed several claims where counsel's pleadings made the court "unable to comprehend the[ir] nature." *Id.* at 3-4, 9-11. Counsel is beginning to compile an unenviable track record, one that the court hopes will soon improve.

ORDER – 4

As the court now explains, it will permit the Burkarts to file an amended complaint that cures the ailments from which their current complaint suffers. Despite the complaint's defects, the court cannot rule out the possibility that the Burkarts can state valid claims arising from the facts they allege. This is particularly true in light of the Washington Supreme Court's recent decision in *Bain v. Metro. Mortgage Group, Inc.*, No. 86206-1, 2012 Wash. LEXIS 578 (Wash. Aug. 16, 2012). *Bain* rejects or at least seriously undermines many of the arguments Defendants raised in their motion to dismiss as to the lawful role of MERS in Washington deeds of trust.

   A.   ***Bain* Disposes of Defendants' Claim that MERS Can Lawfully Act as the Beneficiary in the Burkarts' Deed of Trust.**

In *Bain*, the court held that the decades-old practice of naming MERS as the beneficiary in Washington deeds of trust did not comply with the Washington Deed of Trust Act (RCW Ch. 61.24). A deed of trust provides security for a lender by conveying equitable title to the borrower's property to a trustee who holds the title in trust for the benefit of the lender. *Bain*, 2012 Wash. LEXIS 578, at *9. Should the borrower fail to make payments, the lender-beneficiary can inform the trustee, who then has the power to initiate a non-judicial sale of the property for the benefit of the lender-beneficiary. *Id.* at 10. Indeed, it is this "power of sale" without a court's supervision that necessitates the Deed of Trust Act's numerous protections for borrowers. *Id.*

The typical deed of trust names the borrower as the grantor, the lender (and holder of the note evidencing the loans) as the beneficiary, and a third party as the trustee. *Bain*, 2012 Wash. LEXIS 578, at *9. In this arrangement, the lender-beneficiary is often called the "beneficial owner" of the property. The Burkarts' deed of trust, like the deed at issue in *Bain*, named MERS as the beneficiary, even though the lender (Global) remained the party holding the note. Ex. 2. The purpose of this arrangement is to facilitate the transfer of the benefits of the note (like the right to receive payments and the right to service the loan) along with the beneficial ownership interest. If the original lender sells the loan or

ORDER – 5

its servicing rights to another party, MERS tracks that sale.  If the borrower defaults on the loan, the deed of trust purports to give MERS the right, as the "nominee" of the lender as well any successor to the lender, to appoint a successor trustee.[3]  That trustee can then, after complying with the Deed of Trust Act, complete a non-judicial sale of the property, more commonly known as a foreclosure.

In *Bain*, the court held that RCW § 61.24.005(2), which defines "beneficiary" as "the holder of the instrument or document evidencing the obligations secured by the deed of trust," means that a party that does not hold the note (like MERS) cannot be the beneficiary of a deed of trust.  *Bain*, 2012 Wash. LEXIS 578 at *41.  The court grounded its holding in the plain language of the Deed of Trust Act, but also considered and rejected several attempts to avoid the statute.  It rejected the notion that the parties could modify the Deed of Trust Act by contract.  *Id.* at 37.  And although the *Bain* court would not have prevented MERS from acting as the agent for a lender-beneficiary, it held that in the cases before it, MERS could not point to any principal who had authorized it to act as its agent.  *Id.* at *33-35.

For the most part, however, the *Bain* court did not determine the legal effect of a deed of trust that unlawfully purported to name MERS as its beneficiary.  The court considered several possibilities: that MERS could cure any defect simply by assigning its interests to the lender or whoever currently holds the note, that the deed of trust be rescinded, that the deed of trust be declared void or unenforceable and the borrower have the right to quiet title, or that a court declare an equitable mortgage in favor of the note holder.  *Bain*, 2012 Wash. LEXIS 578 at *41-48.  Although the court gave hints as to its views on several of those options, it concluded that the legal effect of the improper

---

[3] In many transactions, including the Burkarts', the deed of trust names a title insurance company or other third party as the trustee with the understanding that the initial trustee will be replaced by a successor should it become necessary to exercise the power of sale.

ORDER – 6

1    designation of MERS as a beneficiary would depend on what had happened to the note in

2    each case.

3        The *Bain* court did conclude, however, that claiming to be the beneficiary on a

4    deed of trust was a deceptive act within the meaning of the Washington Consumer

5    Protection Act (RCW Ch. 19.86, ("CPA")).   *Bain*, 2012 Wash. LEXIS 578 at *56.

6    Whether a homeowner has a viable CPA claim, however, depends on (among other

7    things) whether it can prove it suffered an injury as a result of MERS's deceptive

8    conduct.  *Id.* at *54-56.

9        Much of Defendants' motion to dismiss relies on the contention that MERS may

10   lawfully serve as a beneficiary.  *Bain* has dispensed with that contention.  But the

11   Burkarts' complaint is deficient for reasons that have nothing to do with MERS's status

12   in their deed of trust.  Before deciding how *Bain* impacts their dispute with MERS and

13   BofA, the court will require them to replead their claims.

14   **B.    The Burkarts Must Replead Their Claims.**

15       There are at least two sets of facts in the Burkarts' complaint that might serve as

16   the foundation for claims upon which the court could grant relief.  First, they contend that

17   BofA representatives misled them during the process of attempting to modify their loan.

18   Second, they signed a deed of trust that unlawfully named MERS as the beneficiary.

19       The claims that the Burkarts raise based on BofA's misconduct in the loan

20   modification process invoke the Washington Consumer Loan Act (RCW Ch. 31.04,

21   "CLA"), the Fair Debt Collection Practices Act (15 U.S.C. §§ 1692-1692p, "FDCPA"),

22   and the CPA.  The FDCPA claim fails as a matter of law, because no BofA entity meets

23   the Act's definition of "debt collector."  15 U.S.C. § 1692a(6).  The CLA claim fails as to

24   at least some of the BofA entities, because that Act does not apply to banks.  RCW

25   § 31.04.025(2)(a). If the Burkarts wish to attempt to state a CLA claim when they

26   replead, they should include allegations that make it plausible to conclude that the CLA

27

28   ORDER – 7

applies to at least one Defendant. The CPA claim is at least plausibly stated. Among the reasons that the CPA claim is plausible is that the Burkarts can plausibly point to an injury—they contend they incurred late fees and other charges as a result of BofA's misconduct in the loan modification process. If the Burkarts' attempt to replead their CPA theory, they must eliminate their 9-page list of allegations (¶¶ 13.1-13.37), most of which have nothing to do with them, in favor of allegations that specify what Defendants did to them in violation of the CPA. They must also consider *Peterson v. Citibank, N.A.*, No. 67177-4-I, 2012 Wash. App. LEXIS 2197 (Wash. Ct. App. Sept. 17, 2012) (applying *Bain* and dismissing CPA claim against MERS).

As to claims based on the defective deed of trust, it is much more difficult to understand how the Burkarts have been injured. They concede that they are obligated to repay their loan to whoever lawfully holds their note. Their complaint does not suggest that anyone is attempting to foreclose on their home. They do not suggest that MERS has done anything as the purported beneficiary of the deed of trust to harm them. If the Burkarts want to plead one or more claims based on MERS's improper designation as the beneficiary in their deed of trust, they must provide sufficient allegations to establish that they have been injured. Their complaint repeatedly fails to do so. Instead, it invents new causes of action that state no injury and request no remedy. The Burkarts' first "cause of action" is an excellent example. They name it "The MERS Deed of Trust Is Not a Valid Security for Global Advisory Group's Promissory Note." ¶ IV.A.[4] This is not a cause of action, it is a legal conclusion. Without an allegation of injury or a remedy, it states no

---

[4] The Burkarts' complaint makes numerous allegations that would matter only if they had sued Global, the entity that made them the loan. They repeatedly claim that they were deceived into taking out their loan in the first place. They allege that Global somehow impaired the note or the deed of trust when it "securitized" the loan by making it part of a pool of other loans used to secure other investment vehicles. The Burkarts have made no allegation that would make MERS or BofA liable for anything Global did. If the Burkarts believe that Global is liable to them, they ought to sue Global. And if the Burkarts have a valid claim based on securitization, they have now twice failed to adequately plead it. *Mickelson* at 10 (stating that the court was "unable to find any intelligible CPA violation" in a theory based on securitization).

ORDER – 8

claim upon which the court can grant relief.  The same is true of the Burkarts' "cause of action" that they name "The MERS Deed of Trust Boilerplate Agreement Is Not Consistent With Washington's Deed of Trust Act . . ."  ¶ IV.B.  Again, this is not a cause of action, it is a legal conclusion (albeit one that is now among the holdings of *Bain*).  *See also Mickelson* at 9 (finding claims "nothing more than legal conclusions unsupported by factual allegations").  Without an allegation of injury or a suggestion of a remedy, that legal conclusion is not a claim upon which the court can grant relief.  And the Burkarts fare no better with the cause of action they name "The Promissory Note and Deed of Trust Are Unconscionable and Unenforceable."  ¶ IV.E.

One of the few recognizable causes of action in the complaint is a claim for breach of contract.  ¶ IV.D.  Here, the Burkarts claim that Defendants breached the promissory note and deed of trust, and violated the duty of good faith and fair dealing inherent in those contracts.  But the note requires the Burkarts to make payments that they admittedly did not make, and permits the lender or its successors to declare a default.  The note does not require anyone to agree to modify it, much less to do so in good faith.  If a Defendant breached the note or a duty arising from the note, the Burkarts make no plausible allegation to illustrate that breach.  The same is true of the deed of trust.  If a defendant breached it, the Burkarts' allegations do not plausibly explain how.

The Burkarts' attempts to state cause of action for racketeering and criminal profiteering suffer from a different set of problems.  When the Burkarts replead their claims, they must focus on the harm that *they* suffered.  Too much of their complaint is an irrelevant excursion into the subprime mortgage market crash that precipitated a broader crash in the housing market.  Whatever the validity of their beliefs as to the role of MERS and banks like BofA in these nationwide events, the Burkarts' task in pleading their case is to explain how *they* were harmed by the actions of the Defendants they have sued.  It does not matter, for purposes of this lawsuit, how other people were allegedly

ORDER – 9

injured.  The Burkarts do not help their case by attaching hundreds of pages of complaints from eight different lawsuits in other states, then incorporating the allegations of those complaints by reference.  When they file a new complaint, they will not incorporate any other complaint by reference.  They will also eliminate invitations that the court read law review articles or "white papers" discussing the mortgage crisis.  They will eliminate "appendixes" which serve only to make their complaint less readable.  Again, their task is to provide a short and plain statement of *their* claims and the relief to which *they* are entitled.

The Burkarts' apparent purpose in making lengthy allegations about conduct that has little to do with them is to label MERS and BofA as criminal enterprises via the Racketeer Influenced Corrupt Organizations Act (18 U.S.C. §§ 1961-1968) and the Washington Criminal Profiteering Act (RCW Ch. 9A.82).  The Burkarts fall well short of stating a claim under either law.  They neither properly plead predicate acts nor do they properly identify criminal enterprises.  Putting that aside, each of these claims raises multiple allegations of fraud, and the Burkarts do not come close to satisfying Federal Rule of Civil Procedure 9(b), which requires them to plead fraud with specificity.

The Burkarts sprinkle their complaint liberally with conclusory accusations of fraud, but they never explain how *they* were defrauded.  Fraud requires, at a minimum, an knowingly false statement intended to reduce a plaintiff's reliance, along with the plaintiff's actual reliance on the statement to his detriment.  *Stiley v. Block*, 925 P.2d 194, 204 (Wash. 1996).  So when the Burkarts complain, for example, that unnamed BofA agents engaged in "fraudulent robo-signing tactics," they are merely blustering.  ¶ 4.7.3 They do not explain how they relied on a robo-signed document to their detriment.  When the Burkarts accuse BofA of defrauding them by acting as the beneficiary on the deed of trust (¶ 7.13), they make no plausible allegation that BofA *knew* that it could not serve as the beneficiary, or *knew* that it had no right to demand loan payments from them.  The

ORDER – 10

same is true of their allegation that any Defendant who claims a beneficial interest under their deed of trust has defrauded them.  ¶ 7.22.  And the Burkarts do themselves no favors by accusing Global (a non-party) of engaging in "securities fraud" by securitizing their loan, ¶ 6.9, where they do not even begin to make plausible allegations of securities fraud under federal or Washington law.

Finally, the Burkarts make a claim to quiet title in their property.  The *Bain* court took a dim view of a quiet title claim in similar circumstances.  *Id.* at 43-44.  If the Burkarts mean to allege that the court can declare their deed of trust invalid, thus rendering the note unsecured, they ought to say so specifically.  Again, the Burkarts should have no difficulty in the wake of *Bain* in pointing out legal defects in their deed of trust.  The question is what remedy the law affords them.

The court does not suggest that its review of the complaints' defects is comprehensive, but the court nonetheless expects a comprehensive overhaul of the complaint.  The Burkarts have at least plausible allegations of wrongdoing, although it is easy to lose sight of them among the numerous irrelevant, implausible, and incomprehensible allegations.  They also have a deed of trust that does not comply with Washington law.  But to state a claim upon which the court can grant relief, the Burkarts must assert their own injuries and then state recognizable causes of action that seek an appropriate remedy for those injuries.

//

//

//

//

//

//

//

ORDER – 11

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## IV.  CONCLUSION

For the reasons previously stated, the court GRANTS Defendants' motion to dismiss (Dkt. # 11) but grants the Burkarts leave to amend their complaint in accordance with this order.  The Burkarts must file their amended complaint no later than October 26, 2012.  If they do not file an amended complaint by that date, the court will dismiss this action without prejudice for failure to prosecute.

DATED this 28th day of September, 2012.

_Richard A Jones_
_____

The Honorable Richard A. Jones
United States District Court Judge

ORDER – 12